Based not on the allegations in the complaint, but on the court's speculation about facts outside the record, including that given the long-standing nature of the regulation and the sheer volume of Medicare claims submitted, that there must have been past violations and that the government must have paid those claims despite actual knowledge. If that mode of analysis were correct, as Brookdale urges on appeal, any defendant in a false claims act case could defeat the claim at the motion to dismiss stage merely by noting that the government payment program had been in place for a long time. Your basic argument is you didn't know about these certifications, so the fact you paid it is not relevant, right? Correct, in the absence of actual knowledge. I get that. It seems to me that makes a lot of sense. Can you help us figure out, you're the government, can you help us figure out whether the issue here is material? Your Honor, the government has not taken a position in this appeal on the bottom line question of materiality. I know you haven't taken a position, but I can't find anything that says how late is late and what's a good reason, so can you help us at all on that? Your Honor, I am authorized to speak on the issues that we briefed in this case. I do think it's worth noting with respect to the materiality inquiry, and this underscores the district court's error on the factor that the government cares very much about, that the district court in this case found that the timing requirement was a condition of payment. The district court found that that factor, which is part of the multi-factor holistic inquiry under Escobar, weighed somewhat in favor of finding a materiality. Yet, at the motion to dismiss stage, with one factor pointing in the direction of materiality, the district court appears to have attached near-dispositive weight. I'm just fascinated why you can't tell us how late is late, or whether lateness is even taken into account by the government. Your Honor, this court discussed the timing requirement and the first panel opinion in this case, and said that there was a violation of the as-soon-thereafter-as-possible requirement in the regulation when there was a delay that wasn't justified. That's – we haven't taken – So how do we know whether the length of a delay is or is not sufficiently explained by a justification? Does the government have any guidance on that? Well, the question for this court on appeal from this decision is whether the district court appropriately dismissed the complaint on the pleadings. As the government – You're very adroit at ignoring my questions. Your Honor, I hear your question.  I can appreciate the court's frustration. However, as Your Honor knows, the government frequently appears as an amicus with authorization from the Solicitor General's office to weigh in on a particular issue or issue. Can you tell us whether the government has ever denied any claims on the basis of what is alleged to have been the false certification here? Well, Your Honor, that is exactly the error that the district court made at this stage in the proceedings by requiring Relator to come forward with evidence. You're not the Relator. You chose not to bring this case. I'm asking, as an officer of the court, do you know – and if you don't know or you're not willing to tell me, that's fine. Just tell me that. Do you know whether the government ever actually denies claims when you do know about a delay? Your Honor, I can tell you I am not aware, but that is outside of the record in this case. And, of course, when the complaint is being dismissed at the motion-to-dismiss stage, the court and this court in reviewing the court's decision below is looking at the pleadings, taking all factual inferences in favor of the Relator. And the allegation in this complaint is that the government was unaware of the violation when it paid Brookdale's claims. Now, I do think it's also worth noting that the allegations in this complaint are not that there was widespread violation of the timing requirement. As the court noted in the first appeal, this appears to be an issue of Brookdale's own making through aggressive solicitation of home health care patients, which created a backlog and a looming financial crisis for Brookdale. Now, the district court, instead of cabining itself to those allegations, which suggests that this is a Brookdale-specific issue, the government was unaware when it paid the claims in the time period of 2011 to 2012, which is the allegation in the complaint. The district court instead assumed, based on Brookdale's argument, that given the long-standing payment plan, that there must have been other violations and that the government paid. Now, we know from Escobar that absent actual knowledge by the government, the payment decisions of the government are simply not relevant. They have no bearing on the materiality question at this stage in the complaint. Based on my lack of success with you so far, I take it you also can't answer then why the question of the date of the certification does not appear on the form that is submitted, so that somebody could look at the form and say, these are the dates of care. This is the date the certification was signed. Therefore, we can see how those do or don't match up. You don't know that either, right? Well, Your Honor, even if that were true, and I see my time has expired, but if I may, even if it were true that the government had the dates. The question is, do you know? Well, but under this court's test, from the first decision in this case, there wouldn't be a violation unless there was not a justifiable delay. So the fact that the government may have the date that the care was provided and the date that the physician certified, doesn't mean the government knows that there was a violation of the timing requirement under this court's test. Are you suggesting you do have that information? Because I thought you didn't have that information. It's not on the form. The certification doesn't have to be submitted. It just has to be on file. So I thought you all said that you didn't know when the certifications were actually signed. So therefore, you wouldn't know whether it was late. And therefore, you wouldn't inquire into whether there was a justifiable reason. Do I misunderstand that? Well, Your Honor, the complaint alleges that the certifications are on file. It's my understanding that no particular form is required, although there are forms available that can be used. But again, even if the government had the dates. Come on, counsel. Did you know they were late or didn't you know they were late? Your Honor, the question is whether the government knew of the violation. And we know of the violation when we are aware that there has been a delay that is not justified. The allegation on the pleadings, and again, this is being decided at the pleading stage, is that the government was unaware of the violation. The district court should have accepted as true that factual allegation. Now, I understand Your Honor's frustration. And all of these types of questions are things that can be addressed and answered in discovery through later stages of the case, resolved after there has been discovery and answers provided on these types of issues if the parties choose to proceed that way. But again, at the motion-to-dismiss stage, the district court significantly erred in holding relator effectively to the burden of coming forward with past claim denials in order to overcome a motion-to-dismiss on materiality when the district court recognized that there was another factor weighing in favor of a finding of materiality. Thank you very much. Good afternoon, Your Honors. I'm Patrick Barrett of the Tennessee Bar. And I would like to reserve three minutes for rebuttal, please. Fine. May it please the Court. Today, we ask the Court to reverse the district court's judgment below because the Court misapplied the Supreme Court's Escobar decision and construed the facts in the pleadings in the defendant's favor in violation of the applicable standard of review. The Escobar essentially affirmed that the term material means having a natural tendency to influence the decision-maker or be capable of influencing the decision-maker, which is... What would lead you to believe that it would be capable or would have if they don't even inquire as to when the certification was signed? They ask you to fill in 81 fields, and not a single one of them asks you to say when the certification was signed. Is Your Honor's question that why did they not ask for the date on the form? Assuming that they don't ask for it when they ask for 81 other things, why would we conclude that it was material? I would think that that would be a matter of factual proof, and there could be other factual matters when the claims are submitted that would bear on that. And that really is... It's true that everything that was on the form is correct. Every blank that was filled in was filled in correctly, correct? We don't concede that. We don't allege that they were wrong, but we don't concede that they were done right. Well, you have to specify where the fraud is with particularity. Right. I'm not saying that the forms necessarily had falsified information on them that way. What I'm saying is we don't concede that all of the forms were done perfectly. The only way that the form itself could evidence fraud is in the certification part of it on the back that says they complied with all of the rules. And the only place that you could put that on the form would be in the remarks section, right? Correct. And the guidance letters only talk about two things that people should put in the remarks section, and neither of them address themselves to when the certification or the attestation was signed, correct? I don't remember that specifically off the top of my head sitting right now, but I believe Your Honor is correct on that. So the bottom line is the date that is on the form, if it is after the episode of care is over, doesn't necessarily mean that the underlying claim is invalid. What it does mean is it raises a question as to whether it was timely. And I think the issue is the regulations provide providers with flexibility, recognizing doctor schedules and everything else. And I think that that is to take that flexibility and then to eliminate the timing requirement entirely is a road map to allow providers to pick the government's pocket. We're trying to figure out whether you met Rule 9. So you give us Exhibit A, you give us Exhibit B. That is the universe of these claims that you say are or might be fraud, right? Well, and also the other ones we have. And the four that are in the complaint. Well, and there are others too. Those are our examples. But no place in Exhibit A or B does it even show when, it shows us when the episode ended. So if you assume that it had to be signed by that date, just for purposes of our discussion, nowhere on either of these do you say when the form was signed. So you can't even look at this to see that these are the claims that you say the form was signed after the episode was done and then arguably without justification. We're not alleging that Exhibits A and B establish as a matter of law that we win. What we're doing is we identified the claims that we say are late in Exhibits A and B. But they don't say why they're, it doesn't show on A and B why they're late. Well... Can you tell from A and B that they're late? Well, they all were certified after the episode was over. We believe that when they were done so... That is not on A or B. That's my point. Okay. No column here tells us that any claim on A and B was certified after the episode and date. Because it doesn't have the date of the certification. The allegations in the complaint are that every one of those claims were certified after the episode of care was over. And it might have been one day and it might have been 12 months. Well, we believe that the vast majority of those are several months late. So we're not talking about a day late. What we're talking about are care that has been provided and literally months later, they're running around trying to get certifications that should already be documented and already be obtained. The senior executives at Brookdale acknowledged as they were doing this that they literally have to go back and literally refresh themselves. The claims are so old. So where in your complaint do you allege the date issue then with respect to these? Is it... In the specific examples of... A, B, C, and D, is that where it is? Well, A, B, C, and D were certified the specific date we say when they're certified. With respect to exhibits A and B, we say that they all were certified after the episode was over. And most cases, it was long after. And you say that in the complaint? Yes. By definition, as long as you've got a valid reason why you did it, you can certify a claim after the episode of care was over, right? Correct. And in fact, that's one of the reasons why there's a process called attestation as opposed to certification. Right? Well, I don't disagree with that. I'm sure there could be others. I think it's to nail down the fact that it's important to get the certifications right. So how is one to know when they're being accused of fraud, how late is too late? If these were all one day late, and I know that's not our case, would you have a case that this was fraud? If they were all one day late, we would not have brought the case. Well, I didn't ask you whether you would have brought it. Do you think it was fraudulent if they were all one day late? Probably not, but I can't rule out that possibility with certainty. I think it involves a factual record, and that's the main problem here. The court decided it not on the factual record. The court looked outside the pleadings and basically took some statements from Brookdale's brief as true, and that violated the standard of care as well as the Escobar decision. And when you're talking about the pleadings, the only pleading that we're looking at is the third amended complaint and the exhibits there, too. Is that correct? Correct. And that's the operative complaint. There's no other pleading. So we don't need... For the identification of the claims? For the motion to dismiss purposes. They're moving to dismiss the third amendment. That's the operative complaint. And that is the only pleading that is present in the case. Correct. So, counsel, if I could ask one question. The appellees argue that the relator did not plead any facts, that the appellees knew they were violating a requirement that was material to payment. So how do you respond to the allegation of the appellees that there was no allegation and nothing in the pleading that would be evidence that they knew they were violating? Well, they concede in their brief that the timing requirement is a condition of payment, that the providers have actual knowledge of materiality because it's labeled as a condition of payment. Doesn't that get back, though, to the series of questions that Judge McKeague posed, and that is if you don't have any parameters of how late is late, then how does that response really satisfy the question? I think that the answer is based on the flexible language used. It was apparently a conscious decision not to have a fixed date. I think that is something that is to the benefit of the providers. And whether it's late or not is something that is a factual matter. It's just like whether something is reasonable or not. That's typically a matter of factual proof under the circumstances. But with all due respect, that's not the question. The question is how late is late that would then be material to the government as to whether to pay the claim. That's the issue here. We believe the timing requirement is material. The materiality is the timing requirement is material. So then if they violated it by is it too late, that is a question of proof. So you said earlier that probably one day would not be considered materially late. Probably. So is it two weeks? Is it a month? Is it six? And I think that's what we've been struggling with here. I think the way that we look at it is the timing requirement is a material requirement. Whether or not it was violated depends on the circumstances. And maybe one day late is not a violation. It doesn't mean that the requirement is not material. It just means that it wasn't violated. Let's assume that they were all at least a couple months late, which is what you've alluded to. And let's assume the reason is, as the government attorney said, that there was this push to do home health care and that got them behind so there's a backlog. And it took a while to work through the backlog. Let's assume all of what we've heard so far is true. Is that information material to the government? And if so, why? It seems to me it's only material if they would not pay it or if they would ask for more information or if they would ask for an audit. So why is it material? It's material because it ensures that the doctors order the care on the front end and it is a projection of medical need on the front end and it ensures that the patient should be receiving Medicare. But there's no allegation here that the doctor didn't order it on the front end or that the care wasn't justified. You don't allege that. We allege that the doctor did not certify necessity prior to the treatment. Not even you get that, well, the treatment started and because of schedules they certified a week or so after the treatment started. Well, you allege he didn't sign it, but you don't allege that the care was done without the doctor ordering it. Well, it is implausible for a doctor to go through the calculation of the confines of the home and needs medical services, plan of care has been established and do all that and make that determination and then not document it. That is, I mean, that just is implausible at least to the relator's perspective. Now, there could be various reasons. Worked with doctors? From time to time. But, you know, that may be why it's even more important for Brookdale to make sure that they have the right certification before they go and provide the care. If there's a question about it, they should maybe slow it down. Thank you. May it please the Court, Brian Roark for Apple East Brookdale Senior Living. I would respectfully suggest, submit to the Court, that the question is not necessarily how late is late. I think that goes more to the question of falsity, which this Court ruled on previously. I think the question for materiality is whether it was a day late, whether it was 11 months, 29 days late. Are there any facts alleged in this case that that mattered one whit to whether the government paid these claims or not? The Court addressed the question to the government. The government's answer here is they're not aware one way or the other. The district court's ruling in this case should be upheld because it correctly applied ESCOBAR, which said to get past Rule 8.9b for pleading materiality, a plaintiff has to plead some facts that make it plausible that the underlying regulatory violation was material to the government's payment of claims. There are no facts alleged in that regard here. You say that the allegation that the certifications came after, I mean considerably after the services or the episodes of care were provided, that that does not meet that threshold question or criterion. That's correct, Your Honor. Why not? There are no allegations in this complaint that even if the signature on the physician certification came 11 months later, there are no allegations that in the 50 years that this regulation has been on the books. This regulation was issued in 1967. It's been out there a long, long time. There's no allegation that whether the signature on the physician certification was late, that the government has ever denied payment of a claim to a home health agency because of that. Is that a question at this stage, or is that a question that should be resolved after some discovery? It's absolutely a question at this stage because the Supreme Court said in footnote 6 to ESCOBAR that looking into materiality is completely appropriate at the Rule 12b6 stage and that a plaintiff has to plead facts making materiality plausible. But I thought there is this one paragraph, 125, which says the United States was unaware of the falsity of the claims that defendant was making and paid the claims and that there is no allegation opposite that. So why don't we take this allegation and fit in the light most favorable to the plaintiff? Because that's simply stating a conclusion. They're stating nothing more than if the government had known that the government hadn't paid. I would submit that that gets nowhere close to 9b. It doesn't allege any facts giving this Court any type of comfort that the relator has any basis for stating just a conclusion. What basis does the relator have for saying if the government had known, it wouldn't have paid the claims? Where is the relator's place in this? The relator is alleged to have been a UR nurse who was brought in to help review claims as part of the held claims project. When this Court ruled previously to relax the 9b standard, it was significant to the Court that the relator herself had worked in reviewing Medicare billing claims. This Court said in its previous opinion, reviewing claims for Medicare billing purposes was Prather's job. If her status matters for how this Court construes the presentment element, it should also matter for how this Court construes materiality. It is shocking that given that this is what this particular relator does, where is any allegation from this relator that in her own experience, she was ever aware that the government would deny payment of claims because of the timeliness of the certification? She doesn't allege that she ever thought... She alleges that the government was unaware. And Your Honor, I don't know... So how could she allege that the government was aware and didn't pay the claims? I don't know what her basis is for alleging how the government was aware. But you're asking her to allege something that's contradictory to what she is alleging. I'm saying that... So why don't you deal with what she says, which is that the United States was unaware of the falsity of the claims and paid the defendants in reliance on the accuracy of these claims. That's a conclusory allegation that I don't think this Court is required to accept as true. So should she say in patient... She has patients A, B, C, and D. Should she say in patient A, the U.S. was unaware, and patient B, would that satisfy you? No, Your Honor. I think we're talking about two separate issues. You concede that the government was unaware, don't you? Nowhere do they ask you for this information. So how would they have been aware? We concede that the government is unaware, and that does not matter at all to the arguments that we're making here. To respond to... Well, that just... It is relevant to the question of whether the fact that they paid the claims has any legal significance to materiality. If they didn't know about it and they paid the claims, you can hardly then stand, as the District Court seemed to do in part, on the fact that the claims were paid. The government's argument makes a lot of sense there. I actually would disagree. If you look back at the Supreme Court's opinion in Escobar, the Supreme Justice Thomas goes through a litany of things that he says materiality isn't. He said it's not how it's labeled. He says it's not just because the government could deny the claim. And then he says, what the opinion says is, proof of materiality could include that the defendant knows that the government routinely denies payment of claims in the mine run of cases involving this particular regulatory violation, period. That's the first part. Then Justice Thomas says, conversely, if there is proof that the government had actual knowledge of the claims that were paid and paid them anyway, that would be very strong evidence. We don't get to the conversely here. Our argument in this case is not that the government had actual knowledge of Brookdale's claims and paid them anyway. Our argument here is that the plaintiff has a burden to carry and the plaintiff has pled no facts showing that compliance with the timing requirement was material to payment. That is completely consistent with what Justice Thomas says. For the government to argue that the only time that past government action matters is when the government has actual knowledge of what was going on, unduly constricts what the Supreme Court was saying. If the government pays a claim and then they find out the claim was fraudulent, I assume they can come back to you to recover the payment and or prosecute your client, right? That's correct. Just out of curiosity, I don't know if this is relevant. I'm just curious. Outside the record, have they come back to you to recover the money on any of these claims? No, Your Honor. Outside the record, I'm not aware of the government ever denying payment of a claim because the physician's signature on the certification was not signed. Did they come back to you and ask you what were the justifications for the lateness of the certification? No, Your Honor. But what we're doing is we're looking at the complaint as opposed to any other fact information that could be in a brief or anywhere else. We look at the complaint and see if it's adequate. My understanding of the Escobar case is that there were approximately five factors that would be evaluated, and it would be a balancing test. So you're focusing on one and saying, well, that one wasn't shown, and therefore you win. But don't you need to address all of the factors? Yes, Your Honor, and if I was focusing on one, it's only because that's where the questions have gone so far. Another very important factor to the Supreme Court was that materiality is more likely found when the regulatory violation goes to the essence of the bargain. And we would strongly contend here that the timing of the physician's signature on the certification doesn't go to the essence of the bargain. Was that decided in part in the previous opinion? The trial court of the circuit. I don't know if the trial court put it in those words. The trial court cited to the essence of the bargain language. The trial court, I think, found, taking a holistic analysis, that the trial court did not think that materiality burden had been carried here. And I think it's important to contrast the facts alleged here with the previous circuit courts that have already construed Escobar. Look at the triple canopy case in the Fourth Circuit. In that case, the relator alleged that the government contracted with triple canopy to provide security services at a military base in Iraq. The relator alleged that the triple canopy used security guards who couldn't meet marksmanship requirements. And the triple canopy falsified marksmanship reports. What the Fourth Circuit held there was, if what the government is paying you for is to provide security services and you bring security guards that can't shoot straight, the government is not getting the benefit of the bargain. The government is not going to pay for those services. It was also significant to the Fourth Circuit that, why did triple canopy falsify the marksmanship reports? That would lend some inference or some credence that they did it because they knew it was material to payment. There's no allegation of any type of misrepresentation here. As Judge McKeague noted, the information that's on the face of the claim itself, no one is alleging that's not correct. But more importantly than that, if Brookdale understood the timing of the physician's signature to matter to payment, then why let the doctors sign the date that they were actually signing? Why isn't there some allegation that the doctors were backdating? There is no misrepresentation in the services that were provided here. Additionally, the government received the benefit of the bargain. The government was paying Brookdale to provide home health services. There's no allegation that Brookdale didn't provide home health services. I know there's smattering of facts in the complaint about aggressive marketing practices. That's not the theory of liability that the relator is taking forward. The theory of liability in this case is that because signatures and certification forms were late,  under the implied doctrine that Escobar endorses and that we've endorsed, which is different than saying that you're just relying on the one feature about the dating. We're not relying on one factor or one feature here. I think it's key to the analysis to compare this to other circuit courts.  The allegations in Escobar is that the government was paying for counseling services and that the defendant in that case provided personnel who weren't qualified and who weren't properly supervised. Was the allegation at bottom that unnecessary services were being provided and that this ability to do the certification after the fact was a way of facilitating unnecessary services? I don't think those are the factual allegations here. We're now on the third amended complaint. Previous iterations of this complaint did seek to hold Brookdale liable for providing medically unnecessary services. Those claims have been dropped in favor of the one claim that's been brought before this court at this time. As a matter of fairness and notice to the defendants, I think we can only be held to respond to the theory of liability that's before the court. It goes to the timing of the signatures. We're not asking for this court to rule that the timing on a physician's certification could never be material. I don't think it's necessary to rule that way. What we're asking is that based on the facts alleged here, where the relator does not call into question the quality of the certification. They say it's late, but they don't allege facts saying that the doctor didn't give consideration to whatever he or she should have. They don't allege that the... How late, to flip Judge McKeague's question, how late would constitute a violation that would be concerning here? Again, I think that goes more to falsity. As we argued previously, the guidance from CMS is you have one year within the provision of services to bill for claims. Clearly, if it's being provided outside of a year, that would be too late. I want to reiterate, though, that for materiality purposes, in the 50 years since the regulation has been out, why isn't there any instance of another FCA case, any litigation involving whether the government denied payment of claims that it shouldn't have, a corporate integrity agreement? We don't... Do we know that there isn't any evidence in the sense that there hasn't been discovery and there hasn't been, because it's on the motion to dismiss stage, there isn't any burden to produce that kind of evidence? Your Honor, there's no burden to produce the evidence, but there's... But then you're relying on the absence of it. So you are putting a burden on them. We're absolutely putting the burden on them. They're the plaintiff in the case. They have to plead materiality with sufficient particularity, and they haven't. We are pointing to the absence of that because the Supreme Court has never said that this court has to set aside judicial experience or common sense when it's looking at a complaint. If this regulation had been passed six months ago, I think you would view it differently than if it was passed 50 years ago. Can you help us out with the difference if there is any between certification and attestation? As I understand it, the certification is what the physician is required to certify, that the patient is homebound, that the patient required the services, that the plan of care was appropriate. I think of attestation in the sense of when a physician is adding something to a medical record that was not documented at the time that the physician provided the service. I'm not sure that it would make a difference in how the case has been pled here. Except that by definition, attestation is going to occur later. An attestation, by definition, would occur later. It seems like in the complaint that the realtor is indicating that the attestation method was how Brookdale obtained the late signatures. Is that correct or incorrect? If that's alleged, I don't think that it would be relevant at the end of the day to whether the certification was appropriate or not. What would be relevant to, I mean, the most extreme position somebody could take that arguably Prather One took was that if you're one day late, that that is a condition of payment and it's fraud. And that can't possibly be true if they provide for an attestation method later on. I would agree with that. In particular, this isn't just about whether the claims were pled correctly. This is about whether Brookdale was engaged in fraud. And in 2011, 2012, when this lawsuit was filed, the government investigated the allegations that were made here. The government declined to intervene in the case. It is not our view that declination is dispositive, but it's certainly a factor that other courts of appeal have looked at. The government reviewed the allegations. Well, that would eliminate the whole relator scheme in the False Claims Act. If we say, well, the government decided not to intervene, that's the end of the case. And that is not my position. My position is it can't be ignored. In the Triple Canopy case, after the government learned. You're going to put a thumb on the scale against the relator whenever the government says we don't really want to intervene. I'm saying I'm not sure how. You say it can't be ignored. You want to view it negatively, right? So you're putting a thumb on the scale for that. What case would you say supports that view? Triple Canopy and also the Genentech Third Circuit case. In Triple Canopy, the allegation is after the government learned of the allegations that Triple Canopy provided guards who couldn't shoot, the allegation is the government did not renew the contract at that point and then the government intervened in the lawsuit. The Fourth Circuit said that's something that the court could take into account in considering materiality. For the Third Circuit, it went the other way. The Third Circuit noted that the government hadn't intervened and that was something that the court could take into account because ultimately the question here is, did compliance with this regulation in 2011, 2012, did it matter to the government back then for payment purposes? And has the Sixth Circuit taken a position on this point that you're asking us to take a position on? No, Your Honor. And has the Supreme Court taken a position? Taken a position on whether intervention matters one way or the other? Right. No, I'm not aware that it has. Thank you. Did you find any cases where the government showed up as an amicus to argue about whether their lack of payment or payment was material and then refused to answer any questions about materiality? I think the government has routinely appeared as amicus in cases subsequent to Escobar because the United States hasn't liked the direction that the case law is going, which is that what the government does in practice matters here and it can't be ignored by the court. It is a fair question here. If there is nothing before the court, and Your Honor, I understand your questions and I would still say we're not putting them to the burden of their evidence at this point, but we're absolutely putting them to the burden of pleading some facts that would show that Brookdale knew back in 2011, 2012, that if the certification wasn't timely, that that would lead to denial of the claim and would be considered fraud. But is that materiality or is that scienter? The way that Justice Thomas describes it, I'm not sure that the court breaks it out in the opinion, and I would submit that it goes somewhat to both. So on scienter you could make the argument that there are allegations in the complaint that people warned key Brookdale people that their activities were suspect here of doing this after the fact as opposed to during the proper time in the process. I would disagree that that's what the complaint says. The complaint talks about all sorts of issues or problems that the relator says that she had with what was going on, therapy re-evaluations, whether they were verbal orders or not. I don't read anywhere in the complaint, and I'm happy to be corrected on this, I don't read anywhere in the complaint where the relator said she complained about the timing of the physician's signature on the certifications and that anyone at Brookdale told her to ignore that. I think even what's alleged is, did Brookdale hold these claims because it didn't have the physician's certification? Yes, absolutely. Did Brookdale not submit claims if it never got the physician's certification? I think that can be taken from the complaint as well. All that the complaint is hanging its hat on for FCA liability purposes is just the fact that the signature was late, that in and of itself, when there aren't other allegations about the services that were provided or that the certification itself could be called into question, our view is that is not enough to plead materiality or scienter. Thank you very much. Thank you. Initially, I would like to note, we cited in our brief, that the effect of the government's declination decision has no bearing on the issues in this appeal. I'm referring to United States X-Ray Chandler v. Cook County, 277, 5th, 3rd, 969, page 974, note 5. There are other authorities as well. I'll also note that if the declination opinion carries so much weight, it obviously takes place after the allegations and after the underlying conduct took place. But the defendants want you to ignore the guidance that came shortly after the allegations in this case, and perhaps with the government knowledge of the allegations in this case, that said it is not acceptable to wait until the end of the episode. The only guidance that I could find is one that came out after these claims were filed. And I'm referring to one that was filed after the claims were filed. Well, how can it be fraudulent to file them the way in which they filed them before the guidance came out when there's no other guidance anywhere that I can find? I'm talking about the materiality aspect of it. And the government's indication after learning of the underlying allegations that it is not acceptable to wait until the end of the episode shows that the government does care. Now, that's after the underlying conduct, but so was the declination decision. And the fact is, the government's not going to know about the underlying conduct until the lawsuit's brought and then it's on their radar. Well, what have they done since then to say it doesn't matter? Are you suggesting there's some evidence that this 2015, I think it was, guidance was brought about because of this lawsuit? No. I'm saying it could be. We don't know. I mean, I don't know what prompted that. I'm saying that it was issued by the government after that. They probably had to promulgate some sort of notice or rules. Well, it's not a rule. It was guidance. So the best you can argue is an after-the-fact guidance, not a rule. No. We were talking about after-the-fact with declination. And I was just pointing out that after the government learned of the fraud, what have they done? Did they say it's okay like down in the case down in the guardrail case? Well, they found out that nobody cared. They knew about the guardrails and the government still paid. That's not what we're talking about here. And that's the key is there was no actual knowledge of the underlying fraud when the claims were submitted. So how could the government possibly have conceded that those claims were valid and that it wasn't material as a matter of law? So the one thing we talk about the facts we have alleged about materiality and, of course, condition of payment. That's one factor. And we also, as the court noted in its opinion the last time, the deadline ensures that the patient needs the care that's provided and it's designed to prevent fraud. How can that not be important? You have a situation where the way the industry works. Why would they allow you to go out a year to submit your request for payment? Well, you can submit your request for payment. There could be different reasons but not the certification. And in the meantime, if you don't have a certification, you can substitute an attestation. I think the attestation allows some types of certifications but it doesn't mean that that's a get-out-of-jail-free card and all of a sudden when we said it must be completed at the time the episode begins or as soon thereafter as followed, we're just going to ignore that. What does the attestation have or say that's different from a certification? Is it under oath? Is there an example that we have as a matter of judicial notice or attached to the complaint? I don't see that there is one attached to the complaint. No. The only reference in the complaint to attestations relates to the properly attested verbal order for the plan of care. And so we talk about attestations in that connection. But the attestations that were submitted in conjunction with the certification, I don't recall what they may or may not say on the form. The other thing is, how could Brookdale have known that this was fraudulent? The doctors were having to pay the doctors because they anticipated they would be uncomfortable. They're sending out these email alerts saying, y'all better know we may get audited if we do this. And why do they not want an audit? Well, they didn't want anybody looking at these claims. They want to submit them and maybe the government notices they were late. Maybe not. If they notice they were late, then we can argue our side. You're suggesting that if a taxpayer, we just finished tax season here, that a taxpayer, they know they did everything right, they'd welcome an audit? Do you know of anybody that would welcome an audit no matter what you did right or wrong? You wouldn't welcome an audit, but I think when you have something to hide specifically, you especially don't want an audit. I see that your red light has been on for a little while. I'm sorry. No, the other side went over their red light, so you've got a chance to do it as well. Thank you both, all three, for your argument. The case will be submitted. And would the clerk at the end court, please. Thank you.